Good morning. May it please the court, my name is Jerry Wilson and I represent Josh Dimmig. I would like to reserve four minutes for rebuttal. It's my understanding in this case that the parties agree regarding the standard for a seizure. We agree that Mr. Dimmig was seized when he was tased. We would argue that he was seized earlier when they had him contained, but I think the parties agree that at the very least he was seized when he was tased. And the parties agree that the Ninth Circuit follows the continuing seizure rule. Then apparently it's where it falls apart, which I find surprising because it seems clear that the Ninth Circuit follows. It is clear that when a force is to be judged, a force used upon a person who has been seized is to be judged pursuant to the reasonablest standard under the Fourth Amendment, which the courts have found to be an objective standard and that is not usually appropriate for summary judgment because of the fact issues and the credibility determinations to be made. So the question, I think, is what facts have we provided that show that the defendants were not reasonable when they ran over Mr. Dimmig and left him under the vehicle? Let's stipulate it was a reckless way to operate the car. Okay? I don't think there's really any dispute about that. But the fact is, reckless or not, it was an accident. It was not an intentional use of force. They didn't intend to run over him. Number one, I don't think it has to be an intentional use of force, which I think is what the Torres case states, where they mistakenly drew the Glock instead of the Taser. That also was a mistake. She meant to go over. I mean, she intended to shoot him with something, and she shot him with the wrong instrument, the wrong weapon. In our case, it seems undisputed they didn't. He, because of his careless driving, ran over the guy by accident. I mean, that doesn't seem to be disputed. Well, they did intend to use the car as cover. As cover. They were intending to drive the vehicle. Not as a bludgeon or a weapon. But they did, they were intending to use it as part of a method to subdue him and to contain him. And they, again, you know, it's just like mistakenly pulling the Glock. You intended to contain this person in the backseat of your vehicle by using the Taser, but you mistakenly pull the Glock and shoot him. This is the same thing. They were using this car as cover and driving it straight at him. And he was doing it in a manner where he's holding on to a gun in his right hand, holding on to the wheel with his left hand. He's actually got his left foot out of the vehicle while he's driving this 2,000-pound vehicle straight at a person and then runs over him. So I think it's going at a very, very slow speed. I mean, this is not unlike people who are, you know, backing out to get in the way to line up something for a tow truck or to, you know, reposition the vehicle if you're not going very far. It's not unusual that somebody would do that. It's people drive all the time with the foot out of the car if they're just moving at a very short distance at a very, very slow speed. Let's suppose that the officer had backed over Mr. Dimmock's foot in a parking lot. Okay. Pure accident. The officer was backing out, didn't see him, ran over him. Would Mr. Dimmock have a tort? Is there a tort vehicle by which he can sue the officer for that kind of an accident? Well, there may be, but I think the question becomes did he run over that person after that person that didn't see him? Let's look. I'll give you a chance to ask me questions. I'd like you to answer my question first if you would. But if you do that, do you have a tort remedy in Arizona? Under the federal system, we have the Federal Tort Claims Act. Is there something equivalent to that in the Arizona system so that you could go to the police department and say, your guy ran over me, it was an accident? Yes. Okay. Did you bring a tort remedy here? Before I was involved, I believe they filed a part of the complaint did have a negligence cause of action, but I believe it was dismissed because they did not meet the notice of claim standard. Okay. So it was a pleading, a failure of pleading. Yes. Well, you have 180 days to file a notice of claim, and I think they did not serve it on the officer. They missed it. Yes. Let me, I want to try to understand just the facts as best I can. Is it undisputed that they were driving the car straight at him the entire time? I think that is undisputed. I guess I can ask the other side. Because they were trying to get close enough to be able to use the taser on him. And so going to that issue, again, it's, the issue is once someone's been seized, what's the standard that you employ when you look at the force that's been applied to this person that's been seized? And I think in Torres and Robin, they all say it's an objective standard, and it doesn't have to be an intentional act. What would happen if they had, let me change the facts, if they had successfully tased him, put him in the car without incident, and then they're driving to the police station and they run a light because they're not paying attention, and you get into an accident, the guy gets hurt in the accident? Well, I think what the standard requires is that you look at all the circumstances in total. So was he driving reasonably? Then no liability. Was he texting on his phone? Then there could be liability. Aren't you making a tort case, I mean, you're trying to bring a tort case under the guise of an excessive force case. If he's texting on a phone, that's not a good thing to do. It's negligent. Everybody agrees you shouldn't do it. But that's not a civil rights violation. I mean, he may have liability for some other reason. But I think that happens on a lot of occasions. You know, in the schools, if a teacher abuses a student, it can be brought as a constitutional violation as well as a tort violation. So I don't think that they're mutually exclusive. Make sure I understand your position. I don't want to nail you down to something you don't mean. But your conception is once the guy's arrested, if a plaintiff is a passenger in a police car, you can bring an excessive force civil rights action because the officer was driving negligently? Is that your position? Well, it depends on the circumstance. I think you have to look at the circumstances in whole. That's what the cases say. And that's why they say some reason. What case says that? I don't know what case says that. I think Robbins and both Torres and Graham all state that you look at all the circumstances, and that's why it's usually not appropriate for summary judgment, because there's so many credibility issues and factual issues to look at. In our case, what I just posited to you, all the facts are undisputed. Pardon? There are no facts to dispute in this case or the hypothetical I just posited to you. Well, yes, because we don't know what if he's driving normally. Well, I said we stipulate he's texting. If he's texting, if he did it intentionally, right? My hypothetical was let's assume he's texting, not paying attention, negligent driving. Then I think it's up to the jury to decide whether that is reasonable, if he was being objectively reasonable in what he's doing. Let's say it's negligent per se. Let's say he ran a light, ran a traffic light. Is that still an excessive force case or is that a tort case? I think it could be both. Well, that's a hard position to adopt, because let's say there's a perfectly appropriate seizure. They've got him in the back of the squad car. They're driving him down to the station. And up until now, there's nothing wrong with the seizure. And then they have this negligently caused automobile accident. That's a civil rights action for excessive force? I don't get it. Well, I think it depends on the jury's determination and all the facts. Why do we have to have the jury involved here as a matter of law? We're just telling you the officer's negligent. He runs the light.  He wasn't trying to run the light. He doesn't have the lights running or the siren going. And I would agree with you. If that's simply the facts, then a judge could look at that and say, yes, as a matter of law, based on those facts alone, I believe the officer was objectively reasonable in what he was doing. No, no, no. You're not taking that. Let us assume that the officer is unreasonable in causing that accident. He has been seized. He's in the back of the squad car. They're on their way to the station with no excuse whatsoever. The officer unreasonably gets in a car accident and the man is injured. Is that excessive force? I have to say I don't think it is. It's a negligently caused accident. We may very well have a tort cause of action. But if I'm right on that question, the question then becomes is, was the negligent operation of the vehicle sufficiently part of the seizure itself that we can't separate it? Because the example that Judge Silverman just gave you is it's quite separated. They're seized in the squad car. They're on their way to the station and then have an accident. Here, is it part and parcel such that we have to treat it all as part of the same intentional act? That's why this case is a little bit difficult for me. Well, the difference I think makes is that the person is seized. And just in Torres, would Torres have had a cause of action for negligence because the officer shot him? I think so. But it was also a constitutional violation because he'd been seized and he was in the back of the car handcuffed and the officer pulled the Glock instead of the Taser. So, yes, if you're in the back, if you have been seized and arrested and you're in the back of the vehicle and the officer acts unreasonably under that Fourth Amendment standard, then you would be liable. And I think that's the fact we have shown in this case is that the officers did act unreasonably after Mr. Dimmick had been tased and seized. Was qualified immunity ever raised in this case? Pardon? Was qualified immunity ever raised in this case? Not that I don't believe so, no. Okay. I mean, my question really is aside as to why not, but okay. I mean, I don't see it in this case. I don't see it in the district court opinion. I don't see it in the briefs. It cries out for raising it as a defense, but I don't see it. Which was also raised in the second Torres case and denied by the Court and sent back to the district court. So I, you know, I would urge the Court. I was going to go through a lot of the facts, but I'm running out of time. So I would just urge the Court to please look at our opening brief and reply. And we have really outlined a number of facts and inferences from the facts, which would show that the officers were not acting reasonably. And also the affidavit of our expert, which I do not believe is conclusory and does state that it was against police procedures to be driving in that manner. Thank you. Good morning. May it please the Court. I'm Nancy Davis here on behalf of the appellees, Deputy Pima County Sheriff Scott McCloud, Stephen Love, and Lori Ibarra. Mr. Dimming has invoked the Fourth Amendment's continuing seizure doctrine because he failed to properly preserve his State law negligence claim. But the Fourth Amendment does not guarantee the right to be free from negligence, and the Fourth Amendment is not a substitute for a failed negligence claim. Contrary to the position asserted by Mr. Dimming here today and in his opening brief, and contrary to the analysis done by the district court in granting the deputy's motion for summary judgment, we believe that the primary issue in this case is whether Mr. Dimming's contact with the patrol car after he had been tased was an unlawful seizure within the meaning of the Fourth Amendment by Deputy McCloud. The answer to that question is no. And so unless the Court has a question, I will focus my discussion on the Fourth Amendment standard and the application of the continuing seizure doctrine to the facts of this case. I've got just a straightforward factual question. Is it undisputed that they were driving the car straight at him the entire time? They were headed in the direction of him. Whether it is in the record that it was straight at it, straight at him the entire time, I believe that that's incorrect. There is a discussion about the fact that he had started on one street, they were headed into a cul-de-sac, he then got onto a more major street and then attempted to walk. And so he was moving during all that time, backing away from the officer, so I don't think that there's anything in the record to say that he was exactly in front of the patrol car the entire time this incident was unfolding. And I don't believe that that's true. When the officer hits him, he's pretty much got to hit him head on because he doesn't run over him with the tires. The guy goes right straight under the car. That's correct. Once he's tased and falls to the ground, the patrol car proceeds directly over him. And is he directly in front of the car at the time he is tased? I don't believe there's any evidence in the record of that. Except what we can infer from what just Bidey just said. I think that's a fair inference, correct. Okay. Mr. Dibbing's position in this case is that once any contact with a law enforcement officer occurs after somebody is in custody or has been seized, then everything is judged under the Fourth Amendment analysis based on the Ninth Circuit's adoption of the continuing seizure doctrine. But that's incorrect and misstates the application of the continuing seizure doctrine. For Mr. Dibbing's position to be correct, every contact after somebody is in custody would then be subject to a 1983 claim. And that is not the law. And in the Torres case, the distinguishing fact was that the officer intended to use force against a suspect who was already seized. And so the mistake that they were arguing Torres was that she had fired her glock instead of a taser and that she intended to use the taser and that it was the wrong instrumentality that was used against him. Here it's undisputed, and in fact on page 515 of the reply brief, Mr. Dibbing acknowledges that there's no evidence that Deputy McCloud intended to have any contact with Mr. Dibbing with the patrol car. It was being used as defensive cover, much like a ballistics vest or the like or a shield, to allow them to get close enough to safely tase Mr. Dibbing. He was carrying a knife. He was throwing rocks. And so they had to be able to get close enough to have an effective tase on him, and the patrol car allowed them to do that. They were not trying to corner him with the patrol car. They were not trying to pin him against a ball. And I would submit that if maybe those facts were in the record, then there could be a different analysis that might step in. Also important, I think, in footnote 4 of the Torres 1 decision, the Court focused on the distinctly, factually distinct situation that there the seizure had occurred. The man was cuffed and sitting in the back seat of the patrol car. And as I submitted earlier, that is a very distinguishing fact in this case. Likewise, the Robbins case, which Mr. Dibbing relies on, involved officers intentionally pulling arrested suspects out of the back of the patrol car and engaging in a struggle with them after having a verbal dispute about whether they could smoke in the back of the patrol car. Again, a very factually distinct situation than the one that unfolded in this case. Further support for this position is found when you look at the purpose of the continuing seizure doctrine. The continuing seizure doctrine was developed by the Ninth Circuit and other circuits to fill in that temporal gap of time of what standard is going to be applied to intentional uses of force after a suspect's been arrested or prior to becoming a pretrial detainee or a convicted felon. And what the continuing seizure doctrine does is to step in and say we're not going to use the Fourteenth Amendment or the Eighth Amendment, but rather the appropriate standard to apply at that point in time would be the Fourth Amendment. But you still have to have a seizure that has occurred to apply that analysis. And it's our position that in this case, even though he had undoubtedly been seized at the time he was tased, the accident that occurred after that point in time is not subject to that analysis. And I gather that you're not arguing qualified immunity in the event that we were to conclude that there was a constitutional violation? Your Honor, qualified immunity I think would certainly apply. I note that on the record below, for whatever reason, counsel did not raise that. It was not briefed in the summary judgment motion. I believe it was asserted as a deferment of defense in the answer. But it was, you're correct, it was not raised at summary judgment, and I do not have an explanation for that. Okay. In sum, we think that because there was no seizure, the district court's grant of summary judgment was correct, notwithstanding that the court engaged in the Fourth Amendment analysis about whether the conduct was objectively reasonable. Therefore, we think that because there was no seizure, that all seven issues raised by Mr. Deming in his opening brief have been rendered moot. And unless the Court has any further questions, I'll rest my case. Thank you, Ms. Davis. Mr. Wilson, you get the last word. Well, I guess I'll try again to convince you that the seizure is the important issue. And I understand the concern of it saying you're just trying to avoid the tort case. But in reality, any time we're bringing a case because force has been used and someone's been injured, that's potentially a tort case. So I don't think we can preclude. I don't think they're mutually exclusive. And so I think that the key is, once a person ---- I think the key is that an officer that qualified immunity, at the very least, you know, protects those who are, you know, either evil or stupid, and that people who are going to be officers of the State or the United States who are going to be liable under 1983 or a Bivens action have to be in the position that they would know at the time that they're doing it that they're violating the Constitution of the United States. And is there anything here that would tell us that the officer would know he was violating the Fourth Amendment of the Constitution at the time that he's trying to use this car to help corral this guy? Well, I think the case law had been settled by then that once you see someone, that you cannot use excessive force on a person. He's not using it. He's just ---- he missed the pedal. He was trying to stop the car. That's what he says. I missed the pedal. I'm not trying to hit him with the car. I'm trying to get the car stopped. That's what his colleagues are telling him. Stop the car. He misses the pedal and ends up running over the guy. He missed the pedal because he didn't follow his sergeant's directions. He missed the pedal because he ---- Is that a violation of the Fourth Amendment? Pardon? Is failing to follow the sergeant's directions a violation of the Fourth Amendment? Well, I think when you add it all together, the totality of the circumstances, I think you come to the conclusion that what he did was not ---- As soon as he runs over the guy, he jumps out and all the other officers jump out and he gets the jack and jacks up the car so they can get the guy out of there. They're really sorry. Yeah. Well, that's another issue about how fast he got to the car because Mr. Demme was under the car long enough where he essentially caught on fire and suffered severe burns. And if you look at ---- we outlined Officer Watkins' testimony where she's en route to the scene. Here's the call for the ambulance. Gets to the scene. They're still at the front of the car at the wheel well. Gets out of her car, starts walking over, and not until that point do they go over and get the jack out of the car. So to say he immediately goes and gets the jack, I think, is not really supported by the evidence of the inferences. It can certainly be done the other way. But I think what's important is once someone has been seized, and especially Mr. Demme, he's knocked to the ground, knocked out with a taser. He can't protect himself. There's nothing he can do. And whether he deserved to be tased or not is a different issue. But once somebody has been seized, they're at the mercy of who has seized them. So I think that's why they have made this rule that an excessive force is to be looked at under the reasonable standard of the Fourth Amendment, because you are at the mercy of the person. And so you need to look at the totality of the circumstances to see what they have done is objectively reasonable. And I think that's what the Robbins and the Torres' case stand for. And really, I don't see much of a difference between driving the vehicle at him and mistakenly pulling the Glock instead of the taser. It's a mistake, and it needs to be reviewed under the totality of the circumstance by a trier of fact to see if what they were doing was objectively reasonable. So I think that's the key difference is a person being seized, and that's why it can be both a tort claim and a constitutional violation. Thank you. Thank you, Mr. Wilson and Ms. Davis. Thank you, too. The case has started. You're submitted. Good morning.
judges: Silverman, Fletcher, Bybee